UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CATHERINE ADAMS,

          Plaintiff,

    v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

          Defendant.

**MEMORANDUM & ORDER**
23-CV-05524 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Catherine Adams sued her employer, Defendant the New York State Department

of Corrections and Community Supervision ("DOCCS"), alleging disability discrimination and

retaliation under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)-(d).  ECF

No. 29 (Amended Complaint).  Defendant moves for summary judgment on both claims.[1]  ECF

No. 36 (Notice of Motion). Because the record shows no nexus between any adverse

employment action and Plaintiff's disability or request for disability accommodation, the Court

GRANTS Defendant's motion.

## BACKGROUND

Plaintiff is a Senior Parole Officer ("SPO") at DOCCS and a member of the Public

Employees Federation ("PEF") union, where she serves as the shop steward—or elected

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits
all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court
refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to
deposition transcripts, where the Court cites to the original page number on the native document.

     The motion papers consist of:  ECF No. 36 (Def.'s Mot.); ECF No. 37 (Def.'s Rule 56.1
Statement); ECF No. 38 (Def.'s Mem.); ECF No. 39 (Def.'s Decl. & Exs.); ECF No. 41 (Pl.'s
Opp.); ECF No. 42 (Pl.'s Rule 56.1 Counterstatement); ECF No. 43 (Pl.'s Decl. & Exs.); and
ECF No. 46 (Def.'s Reply).

employee representative—for the Brooklyn region.[2]  ECF No. 42 ¶¶ 2, 5.  In 2008, Plaintiff was

diagnosed with sciatic neuropathy, a medical condition that causes instability in her left ankle

and requires her to wear certain footwear—namely, sneakers.  *Id.* ¶ 6.  DOCCS's policy,

however, provides that "[s]neakers . . . are not to be worn on duty unless required by an

employee's assignment or by a medication note."  *Id.* ¶ 7.  The policy also bans flip flops and

"[c]lothing traditionally worn for athletic activities . . . except when appropriate for specific

assignments or functions."  ECF No. 39-5 at 1.

       In 2017, Plaintiff requested a footwear accommodation and submitted an accompanying

doctor's note.  ECF No. 42 ¶ 10.  Although the request was not processed, and therefore not

approved, Plaintiff nevertheless began wearing sneakers to work.  *Id.* ¶¶ 10, 17.  In 2018,

Plaintiff's supervisor, Area Supervisor ("AS") Smith, requested that Plaintiff provide a new

doctor's note justifying her sneaker use and providing a diagnosis and prognosis.  *Id.* ¶ 11.

Plaintiff complied, and after meeting with AS Smith about applying for a reasonable

accommodation, Plaintiff again requested a footwear accommodation on August 8, 2018.  *Id.*

¶ 12; ECF No. 39-7 at 8–9.  The request was approved the same day, and Plaintiff was permitted

to wear black sneakers with no designs, as "DOCCS is a paramilitary and professional

organization" that seeks "to maintain a professional appearance while still providing a reasonable

accommodation."  ECF No. 42 ¶ 13; ECF No. 39-7 at 4.

       Plaintiff subsequently sought permission to wear sneakers with other colors, which at

least one other DOCCS employee has an accommodation to do, but the request was denied.  ECF

No. 42 ¶¶ 14, 19.  Plaintiff then asked DOCCS to subsidize her black sneakers, but that request

---

[2]     Unless otherwise indicated, the Court recites the facts from Plaintiff's counterstatement to Defendant's Rule 56.1 statement to the extent those facts are undisputed by the parties and incorporates their references to the record.

was also denied. ECF No. 39-7 at 11, 13. In denying the request, a DOCCS administrator

explained to Plaintiff that a pair of shoes, unlike subsidized office equipment, is "considered a

personal item that [an employee] can take in and out of the office." *Id.* at 13. Indeed, Plaintiff

cannot identify any colleagues who have been reimbursed for footwear. ECF No. 42 ¶ 16.

    After Plaintiff was granted the footwear accommodation, her supervisors began making

negative remarks about her sneakers. *Id.* ¶ 21. One supervisor, AS Welsch, noted that Plaintiff's

laces were tied incorrectly; meanwhile, AS Welsch was wearing flip flops. ECF No. 29 ¶ 45.

Other DOCCS employees also wore prohibited footwear, including non-black sneakers, with no

accommodations and apparently no consequences. ECF No. 42 ¶ 17. And those were not the

only dress code violations that Plaintiff witnessed. *Id.* ¶ 20. On December 2, 2020, Plaintiff

noticed an employee wearing workout clothes. *Id.* ¶ 22. She informed Regional Director ("RD")

Squillacioti and inquired whether workout clothes were permitted. *Id.* RD Squillacioti orally

directed Plaintiff to divulge the name of the employee, but, as the union shop steward, Plaintiff

"believed she had a duty to protect the employee" and indicated she would consult with PEF

Council Leader Gina Lopez before revealing any information. *Id.*; ECF No. 29 ¶ 53; ECF

No. 39-10 at 1.

    The next day, on December 3, 2020, RD Squillacioti gave Plaintiff a written order to

reveal the employee's name. ECF No. 42 ¶ 22. The order warned that "[f]ailure to comply . . .

may result in further administrative action up to and including the issuance of a Notice of

Discipline." ECF No. 39-8. RD Squillacioti explained to Plaintiff that it was not his intent to

discipline the employee wearing workout clothes; rather, he hoped to investigate any

unauthorized workouts in the building. ECF No. 42 ¶ 22. But still, Plaintiff refused to disclose

the employee's identity. *Id.* RD Squillacioti then received an email from Lopez, the PEF

Council Leader, who maintained that Plaintiff was not obligated to release the information that RD Squillacioti was requesting. *See* ECF No. 39-10 at 2. Shortly thereafter, RD Squillacioti reported Plaintiff's noncompliance to Matthew Bloomingdale, Assistant Director of Labor Relations, indicating that he "provided SPO Adams with [a] written Direct Order and she failed to comply." ECF No. 39-9; ECF No. 42 ¶ 23. RD Squillacioti testified that Plaintiff's "[i]nsubordination" warranted discipline, but that the anonymous employee's dress code violation did not. ECF No. 43-1 at 148:24–25, 149:2–7.

Plaintiff's work troubles did not stop there. On December 28, 2020, while Plaintiff was leaving work, she injured her left ankle and proceeded to take sick leave. ECF No. 42 ¶¶ 24–25. The next day, Assistant RD ("ARD") Jean-Baptiste directed Plaintiff to appear for a revocation hearing despite her injury and sick leave. *Id.* ¶ 25. According to Plaintiff, ARD Jean-Baptiste initially insisted that Plaintiff appear in person, but because Plaintiff's "ankle had swollen," and because she did not have the requisite footwear, Plaintiff appeared virtually. ECF No. 39-3 at 98:24–25, 99:2–5. Plaintiff testified that she "did not want to lose the hearing," which had already been adjourned once, "so [she] proceeded with it" virtually. *Id.* at 99:14–19.

When Plaintiff returned to work in early January 2021, she submitted various internal reports about her workplace injury, one of which shows a notation from RD Squillacioti: "Medical attention should be sought as needed." ECF No. 42 ¶ 26. A few weeks later, Plaintiff received a Notice of Discipline ("NOD") dated January 26, 2021, alleging that she violated certain sections of the Employee Manual on December 2 and 3, 2020. *Id.* ¶ 27. Specifically, the NOD charged that Plaintiff failed to disclose the identity of the employee wearing workout clothes, and in doing so, she failed to comply with oral and written orders. *Id.* The NOD also called for a 45-day suspension without pay, which was stayed pending arbitration. *Id.* ¶¶ 27, 30.

4

The NOD was signed by John Shipley, Director of Labor Relations, and RD Squillacioti testified that he and the Labor Relations Department jointly pursued the NOD. *Id.* ¶ 27; ECF No. 39-4 at 58:2–3.

Several months later, in June 2021, Plaintiff underwent surgery on her left ankle following her December 28, 2020, injury and took additional sick leave to recover. ECF No. 42 ¶ 31. When Plaintiff returned from leave in October 2021, she purportedly continued to face harassment. ECF No. 29 ¶¶ 66–75. One supervisor, AS Jeffries, observed Plaintiff's shoes, laughed, and asked, "[A]re those black sneakers?" *Id.* ¶ 68. Another supervisor, AS Granum, made similar negative references about Plaintiff's footwear, as did Plaintiff's colleague, SPO Johnson. *Id.* ¶ 69; ECF No. 43-2 at 116:3–6. Plaintiff's Bureau Chief ("BC"), BC McCleary, even "unsubmitted" certain of Plaintiff's timesheets, which Plaintiff alleges affected her compensation and was the product of disability discrimination. ECF No. 29 ¶¶ 72, 74. Plaintiff testified that BC McCleary also "unsubmitted" her timesheets back in 2014, and that at some point seemingly more recently, BC McCleary "question[ed] [Plaintiff's] need for leave." ECF No. 39-3 at 123:19–20; ECF No. 43-2 at 119:2–6. Plaintiff alleges that the "unsubmitted timesheets related to Plaintiff tending to union duties and receiving her mandatory coronavirus tests." ECF No. 29 ¶ 71.

Finally, on January 13, 2023, the arbitration concerning Plaintiff's NOD concluded, and the arbitrator found that Plaintiff failed to comply with RD Squillacioti's orders and violated certain rules. ECF No. 42 ¶ 29. The arbitrator also found, however, that a 45-day suspension without pay was not warranted. *Id.* Instead, a 4-day suspension without pay was appropriate, which Plaintiff served. *Id.* ¶¶ 29, 30. Plaintiff then filed a complaint with the Equal Opportunity Employment Commission and received a right-to-sue letter on April 24, 2023. ECF No. 29-1.

Plaintiff initially sued DOCCS on July 20, 2023, but she filed an amended complaint on April

11, 2024.[3]  On June 13, 2024, Defendant filed a motion for summary judgment, which is now

fully briefed and pending before the Court.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The Court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party

has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a

genuine issue of material fact, the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011).

When deciding a summary judgment motion, any ambiguities and inferences drawn from

the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen.

Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  "In reviewing the evidence and the

inferences that may reasonably be drawn, [the Court] may not make credibility determinations or

---

[3]      On April 11, 2024, the Court issued an order permitting Plaintiff to amend her complaint
to replace her original claims, which arose under the Americans with Disabilities Act, the New
York State Human Rights Law, and the New York City Human Rights Law, with her current
claims under the Rehabilitation Act. *See* April 11, 2024, Text Order.  The amended complaint
appears to inadvertently contain vestiges of Plaintiff's original claims, *see, e.g.*, ECF No. 29
¶¶ 8, 10, 12, 23–25, 77, 82, which the Court does not address, as they fall outside of the scope of
the Court's order permitting amendment, and they are not discussed in the parties' briefing.

weigh the evidence. . . . Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor*

*v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017).

## DISCUSSION

Plaintiff asserts disability discrimination and retaliation claims under the Rehabilitation

Act.[4]  "The Rehabilitation Act provides that no individual shall be subject to discrimination in

any program or activity receiving federal financial assistance '*solely by reason* of her or his

disability.'"  *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019) (quoting 29 U.S.C.

§ 794(a)).  Courts in this Circuit have concluded that "New York's continued acceptance of

federal funds on behalf of [DOCCS] constitutes a waiver of sovereign immunity as to all of [a]

plaintiff's Rehabilitation Act claims."  *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414

(S.D.N.Y. 2006); *see also Ramirez v. Bernstein*, No. 17-cv-3825, 2020 WL 7230729, at *8

(S.D.N.Y. Dec. 7, 2020) ("[B]ecause DOCCS accepts federal funds, it lacks sovereign immunity

under the Rehabilitation Act.").  Thus, "any person aggrieved by any act or failure to act" by

DOCCS may bring suit under the Rehabilitation Act.  29 U.S.C. § 794a(a)(2).

Rehabilitation Act claims are analyzed under the familiar *McDonnell Douglas* burden-

shifting framework.  *See Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-cv, 2024 WL

3264125, at *1 (2d Cir. July 2, 2024) (disability discrimination); *Dodd v. City Univ. of New York*,

489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) (retaliation).  That is, if the plaintiff establishes a

*prima facie* claim of disability discrimination or retaliation, "the burden then shifts to the

defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment

decision."  *Daly*, 2024 WL 3264125, at *1.  If the defendant satisfies that burden, "the burden

---

[4]    The Court assumes, without deciding, that none of Plaintiff's claims are time-barred.

then shifts back to the plaintiff to provide some evidence that the defendant's proffered reasons

are a pretext, and that discrimination was the real reason for the defendant's action." *Id.*

## I.    Discrimination Claim

To establish a *prima facie* claim of disability discrimination under the Rehabilitation Act,

a plaintiff must show:  "(1) [sh]e is disabled within the meaning of the Act; (2) [sh]e was

otherwise qualified to perform the essential functions of h[er] job, with or without reasonable

accommodation; (3) [sh]e suffered an adverse employment action due solely to h[er] disability;

and (4) h[er] employer receives federal financial assistance." *Henry v. McDonald*, 531 F. Supp.

3d 573, 588 (E.D.N.Y. 2021).  Defendant contends that Plaintiff cannot establish the third

element—that she suffered an adverse employment action due solely to her disability.  *See* ECF

No. 38 at 19.

### A.    *Adverse Employment Action*

An "adverse employment action" is a "materially adverse change in the terms and

conditions of employment." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir.

2004).[5]  A "materially adverse change" must be "more disruptive than a mere inconvenience or

an alteration of job responsibilities." *Id.*  Examples include "termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices . . . unique to a

particular situation." *Id.*  Here, Plaintiff identifies several events that, in her view, may constitute

---

[5]    In *Sanders*, the Second Circuit defined an "adverse employment action" in the context of
potential liability under Title VII of the Civil Rights Act of 1964.  *See* 361 F.3d at 755.
However, courts in this Circuit define an "adverse employment action" under the Rehabilitation
Act "just as [they do] under other employment discrimination statutes." *Carter v. Potter*,
No. 06-cv-3854, 2008 WL 1848639, at *3 (E.D.N.Y. Apr. 23, 2008) (citing, *inter alia*, *Leget v.
Henderson*, No. 99-cv-3636, 2001 WL 43615, at *5 (S.D.N.Y. Jan. 18, 2001) (treating the
definition of an adverse employment action under the Rehabilitation Act identically to the
definition of an adverse employment action under Title VII)).

adverse employment actions: "suspension, denied disability accommodation, lost sick time, denied reimbursement, . . . lost pay and time from unsubmitted time sheets, and humiliating comments about Plaintiff's disability footwear." ECF No. 41 at 12. The Court addresses each allegation in turn.

First, Plaintiff's four-day suspension without pay is likely an adverse employment action. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (finding that a week-long suspension without pay was an adverse employment action); *Cayetano v. Fed. Express Corp.*, No. 19-cv-10619, 2022 WL 2467735, at *9 (S.D.N.Y. July 6, 2022) (finding that a 90-day unpaid leave was an adverse employment action). Second, Plaintiff's "denied disability accommodation" is not supported by the record, which shows that Plaintiff was granted a disability accommodation, albeit within certain parameters. *See* ECF No. 42 ¶ 13; ECF No. 39-7 at 4 (granting Plaintiff approval to wear sneakers at work but specifying that they must be black with no designs). Because the purported denial of Plaintiff's disability accommodation has no basis in the record, it cannot be an adverse employment action.[6] Third, the fact that "Plaintiff was apparently prevented from using [her] sick leave may constitute an adverse employment action." *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 429 (E.D.N.Y. 2014); *see also Krishnapillai v. Donahoe*, No. 09-cv-1022, 2013 WL 5423724, at *13 (E.D.N.Y. Sept. 26, 2013) ("[G]iven the significant effects of denying an employee the use of paid sick time . . . the court finds that this is sufficient to establish an adverse employment action."); *LaHood*, 2009 WL 3199687, at *20 (concluding that the denial of sick leave may be an adverse employment action).

---

[6]     To the extent Plaintiff claims that AS Smith's request for a doctor's note is an adverse employment action, such requests do not rise to that level. *See Delaney v. LaHood*, No. 07-cv-471, 2009 WL 3199687, at *20 (E.D.N.Y. Sept. 30, 2009) ("Legitimate requests for medical documentation . . . are not materially adverse actions.").

Fourth, Plaintiff's "denied reimbursement" for her black sneakers is not an adverse employment action. Plaintiff cannot identify any colleagues who have been reimbursed for footwear, as DOCCS only reimburses employees for office equipment rather than personal items. *See* ECF No. 42 ¶ 16; ECF No. 39-7 at 13. And "denied reimbursement" cannot constitute an adverse employment action if that denial is consistent with an employer's policy. *See Cotterell*, 64 F. Supp. 3d at 425. Fifth, Plaintiff's "lost pay and time" from the allegedly unsubmitted timesheets may qualify as an adverse employment action. *See United States v. New York City Dep't of Educ.*, 407 F. Supp. 3d 365, 397 (S.D.N.Y. 2018) ("Denial or loss of extra hours resulting in loss of actual income can constitute an adverse employment action."). Sixth, and finally, while Plaintiff may have endured "humiliating comments about [her] disability footwear," "being humiliated does not, without more, constitute an adverse employment action." *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 481 (S.D.N.Y. 2013).

To sum up, three of Plaintiff's allegations potentially qualify as adverse employment actions: Plaintiff's suspension, her lost sick time, and her lost pay and time from unsubmitted time sheets.

### B. Causation

Next, Plaintiff must show that her disability was a "but-for cause" of one of those employment actions, but she need not show that it was the "sole cause." *Natofsky*, 921 F.3d at 341. To demonstrate causation at the *prima facie* stage, "Plaintiff has a *de minimis* burden to produce direct or circumstantial evidence that would lead a reasonable fact-finder to conclude that [the adverse employment action] occurred under circumstances giving rise to an inference of discrimination." *Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-cv-3137, 2020 WL 5645218, at *15 (E.D.N.Y. Sept. 21, 2020). "Evidence leading to the inference of discrimination may

include discriminatory comments made by the defendant relating to a disability, failure to take actions required for a disabled employee to return to work, or preferential treatment of employees similarly situated to the plaintiff who are not members of the plaintiff's protected class." *Id.* To determine whether a reasonable factfinder could discern an inference of discrimination in this case, the Court examines the circumstances surrounding each of the relevant employment actions.

i.       Plaintiff's Suspension

First, there is nothing in the record linking the NOD, or Plaintiff's subsequent suspension, to her disability. Instead, Plaintiff concedes that her suspension arose from her repeated refusal to comply with RD Squillacioti's orders to identify the employee she saw in workout clothes. *See* ECF No. 42 ¶¶ 22–23, 27, 29. And the documentary evidence reflects that. On December 3, 2020, RD Squillacioti issued a written order directing Plaintiff to reveal the employee's name or risk "further administrative action up to and including the issuance of [an NOD]." ECF No. 39-8. Then Lopez, the PEF Council Leader, emailed RD Squillacioti about Plaintiff's right to refuse to disclose the employee's identity. ECF No. 39-10 at 2. Shortly thereafter, RD Squillacioti emailed Bloomingdale, Assistant Director of Labor Relations, and explained that he "provided SPO Adams with [a] written Direct Order [to disclose the employee's name] and she failed to comply." ECF No. 39-9. Finally, Plaintiff received the NOD, dated January 26, 2021, which alleged violations of the Employee Manual from Plaintiff's refusal to comply with direct orders on December 2 and 3, 2020. ECF No. 39-12. Plaintiff's disability appears nowhere in these communications, and for good reason: her failure to identify the employee wearing workout clothes is entirely unrelated to her disability.

11

To the extent Plaintiff argues that RD Squillacioti engaged in preferential treatment by disciplining Plaintiff but showing no intention of disciplining the anonymous employee, that argument falls flat. Even assuming the alleged preferential treatment gives rise to an inference of discrimination, RD Squillacioti testified that Plaintiff's "[i]nsubordination" warranted discipline, which distinguished her from the anonymous employee, and which is a legitimate, nondiscriminatory reason for Plaintiff's suspension that she does not rebut. ECF No. 43-1 at 148:24–25, 149:2–7. And although the NOD leading to Plaintiff's suspension was issued shortly after Plaintiff returned from medical leave and reported her workplace injury, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). In any event, there is insufficient temporal proximity between Plaintiff's request and receipt of a reasonable accommodation on August 8, 2018, and the NOD and ensuing suspension, which occurred years later. *See* ECF No. 42 ¶ 12.

For these reasons, no reasonable factfinder could conclude that Plaintiff's NOD or suspension was the result of disability discrimination.

ii.       Plaintiff's Lost Sick Time

Next, the record is similarly devoid of any evidence leading to an inference of discrimination surrounding Plaintiff's lost sick time. Rather, the record indicates that while Plaintiff was on sick leave, ARD Jean-Baptiste directed her to appear for a revocation hearing despite her injury and leave. ECF No. 42 ¶ 25. ARD Jean-Baptiste initially insisted that Plaintiff appear in person, but because Plaintiff's "ankle had swollen," and because she did not have the appropriate footwear, Plaintiff appeared virtually. ECF No. 39-3 at 98:24–25, 99:2–5. Plaintiff testified that she "did not want to lose the hearing," which had already been adjourned once, "so [she] proceeded with it." *Id.* at 99:14–19. If anything, then, the record shows that

ARD Jean-Baptiste accommodated Plaintiff's disability by allowing her to proceed virtually

when she "did not want to lose the hearing." *Id.* at 99:18.  Perhaps ARD Jean-Baptiste should

not have contacted Plaintiff during her sick leave, but there is no indication that ARD Jean-

Baptiste did so *because of* Plaintiff's disability.  *See Natofsky*, 921 F.3d at 351 (finding that no

reasonable juror could conclude that the plaintiff would not have suffered an adverse

employment action but for his disability).  As Plaintiff has put forth no evidence suggesting that

ARD Jean-Baptiste's actions were related to her disability, no reasonable jury could find that

Plaintiff's lost sick time was the product of disability discrimination.

iii.   <u>Plaintiff's Lost Pay and Time from Unsubmitted Time Sheets</u>

Finally, the record does not show that BC McCleary's "unsubmitting" of Plaintiff's

timesheets, though odd, was discriminatory.  Although Plaintiff testified that BC McCleary

"question[ed] [Plaintiff's] need for leave" at some unidentified time, Plaintiff also alleges that

the "unsubmitted timesheets related to Plaintiff tending to union duties and receiving her

mandatory coronavirus tests," not Plaintiff's medical leave.  ECF No. 43-2 at 119:2–6; ECF No.

29 ¶ 71.  Moreover, Plaintiff testified that BC McCleary's "unsubmitting" practice dates back to

2014, *four years before* Plaintiff requested and was granted her disability accommodation.  ECF

No. 39-3 at 123:19–20.  A four-year gap, in which the allegedly adverse employment actions

began before the request for disability accommodation, stands in stark contrast to the "gaps of

two months or less . . . between disclosure of a disability and an adverse action" that may allow

an inference of disability discrimination.  *Kamiel v. Hai St. Kitchen & Co. LLC,* No. 19-cv-5336,

2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) (collecting cases).  Thus, any nexus between

Plaintiff's disability and BC McCleary's "unsubmitting" of Plaintiff's timesheets remains purely

speculative.

13

Because Plaintiff cannot demonstrate a genuine dispute of material fact as to whether her

disability was a but-for cause of any adverse employment actions, Defendant is entitled to

summary judgment on Plaintiff's disability discrimination claim.[7]

## II.    Retaliation Claim

Next, to state a *prima facie* claim of retaliation under the Rehabilitation Act, a plaintiff

must establish that:  "(i) [she] was engaged in protected activity; (ii) the alleged retaliator knew

that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was

taken against plaintiff; and (iv) a causal connection exists between the protected activity and the

adverse action."  *Natofsky*, 921 F.3d at 353.  A causal connection may be demonstrated either

"(1) indirectly, by showing that the protected activity was followed closely by discriminatory

treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory

---

[7]    In further support of her discrimination claim, Plaintiff appears to advance hostile work environment and disparate treatment theories of liability.  ECF No. 41 at 12–13.  As described above, those theories require a showing that the alleged mistreatment was *because of* a plaintiff's disability.  *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 400 (E.D.N.Y. 2016) (hostile work environment); *Einsohn v. N.Y.C. Dep't of Educ.*, No. 19-cv-2660, 2022 WL 955110, at *6 (E.D.N.Y. Mar. 30, 2022) (disparate treatment).  For the reasons already discussed, there is nothing in the record tying any purported hostility to Plaintiff's disability, except for the "humiliating comments about Plaintiff's disability footwear," which do not amount to a hostile work environment.  ECF No. 41 at 12; *see Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 561 (S.D.N.Y. 2022) ("[E]xcessive criticism and rudeness do not constitute a hostile work environment.").  Nor is there evidence tying any unfair treatment to Plaintiff's disability.  Although other employees apparently violated the dress code—AS Welsch wore flip flops, ECF No. 29 ¶ 45, and others wore non-black sneakers, ECF No. 42 ¶ 17—there is no evidence suggesting that the dress code was never enforced against those employees, or that it was enforced against Plaintiff, but not those employees, *because of* Plaintiff's disability.  As for the DOCCS employee who was granted an accommodation to wear sneakers without a color restriction, ECF No. 42 ¶ 19, that evidence, if anything, cuts against an inference of discrimination, as the other employee presumably also suffers from a disability.  *See Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010, 2019 WL 294309, at *4 (S.D.N.Y. Jan. 23, 2019) ("Evidence leading to the inference of discrimination may include . . . preferential treatment of employees similarly situated to the plaintiff *who are not members of the plaintiff's protected class*.").

animus directed against the plaintiff by the defendant." *Id.*  Defendant contends that Plaintiff

cannot establish the requisite causation between a protected activity and an adverse employment

action.  ECF No. 38 at 22–30.

Seeking a reasonable accommodation for a disability, which includes a related request for

medical leave, is a protected activity under the Rehabilitation Act.  *Clark v. Jewish Childcare*

*Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015).  And as explained above, Plaintiff suffered

three potentially adverse employment actions.  *See supra* § I.A.  Plaintiff, however, only argues

that the NOD and resulting suspension were adverse employment actions for purposes of her

retaliation claim, so the Court limits its analysis to those purportedly adverse actions.  *See* ECF

No. 41 at 13–15.[8]  Therefore, the analysis boils down to the link—or lack thereof—between

Plaintiff's requests for an accommodation and leave, on the one hand, and her NOD and

suspension, on the other.

In support of that link, Plaintiff argues that the NOD was issued shortly after Plaintiff

requested and took medical leave, even though it addressed an infraction from "months earlier,"

and that such temporal proximity permits a reasonable inference of a retaliatory motive.  ECF

No. 41 at 14.  Plaintiff also suggests a temporal proximity between the NOD and Plaintiff's

"requests for reasonable accommodation in years prior."  *Id.*  Finally, Plaintiff argues that the

temporal evidence of a retaliatory motive is compounded by "countless derogatory remarks

regarding Plaintiff's accommodation gear."  *Id.* at 15.

Again, Plaintiff's arguments miss the mark.  True, "temporal proximity of events may

give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of

retaliation," but "without more, such temporal proximity is insufficient to satisfy [Plaintiff's]

---

[8]     "Arguments not raised in a party's brief are deemed waived."  *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020).

burden to bring forward some evidence of pretext." *Gonzalez v. City of New York*, 845 F. App'x

11, 15 (2d Cir. 2021).  And although Plaintiff alleges "countless derogatory remarks" from AS

Welsch, AS Jeffries, AS Granum, and SPO Johnson, *see* ECF No. 41 15; ECF No. 29 ¶¶ 45, 68–

69, Plaintiff does not allege, nor is there any evidence, that those individuals were involved in

her NOD or suspension.  Conversely, there are no allegations or evidence that the individuals

who did pursue Plaintiff's NOD and suspension—RD Squillacioti and Shipley, Director of Labor

Relations—made any negative comments about Plaintiff's footwear or disability.  *See* ECF No.

39-4 at 58:2–3 (RD Squillacioti testifying that he and Labor Relations jointly pursued the NOD).

The only piece of evidence tying RD Squillacioti to Plaintiff's disability is his notation on

Plaintiff's workplace injury report noting, "[m]edical attention should be sought as needed"—a

far cry from discriminatory animus.  ECF No. 42 ¶ 26; *see Partridge v. HIP of Greater New

York*, No. 97-cv-0453, 2000 WL 827299, at *5 (S.D.N.Y. June 26, 2000) ("A single stray and

seemingly innocent comment about the plaintiff's health does not raise a triable issue of fact

concerning the defendant's alleged discrimination based on disability.").

Thus, Plaintiff cannot show a genuine dispute of material fact as to whether a causal

connection exists between a protected activity and an adverse action, and Defendant is entitled to

summary judgment on Plaintiff's retaliation claim.

16

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary

judgment. The Clerk of Court is respectfully directed to enter judgment consistent with this

Order and to close the case.


SO ORDERED.

/s/ Hector Gonzalez
 HECTOR GONZALEZ
 United States District Judge


Dated: Brooklyn, New York
       June 13, 2025